The next argument is in Cooper Technologies v. Dudas, Appeal 1130. Mr. Cruz, good morning. Welcome. Please proceed. May it please the Court. The Patent Office's application of inter partes reexamination in this case is contrary to the plain language of two separate statutes. First, it is contrary to the express language of the AIPA, which provides that it applies only to, quote, original applications that are filed after November 1999. Well, it depends on what you mean by an original application. That's what the dispute is here. It absolutely does, and the central question in this appeal is why did Congress include the word original? We would submit that the Patent Office's attempt to define original to encompass all applications other than applications for reissue patents is inconsistent with the statutory language. Well, where's the inconsistency? It's inconsistent for two reasons. One, it's inconsistent with the AIPA. It's separately inconsistent with section 21. Just one at a time. Okay. Where's the clash between the language of the Act and the interpretation of the Patent Office? What words in the Act make the Patent Office's interpretation unavailable, just preclude, blocked out? There are four reasons I would submit why the PTO… I'm asking for language, not reasoning, not lawyer argument, but language. What language in the statute is collided with by their construction? The language is any patent that issues from an original application, and the whole focus is the word original, because the Patent Office's definition all but reads original out of the Act, and the reason we would submit that's not reasonable. Why do you say it reads it out of the Act? It distinguishes between reissue applications and all other applications. That's giving meaning. Now, it may not give the meaning you would like, but it's giving meaning. So it doesn't offend the principle that all meaning is obliterated by the construction. I don't disagree, Your Honor, but what I would submit is that, first of all, it's inconsistent with the ordinary meaning of the word original. Well, maybe it doesn't have an ordinary meaning. Maybe it depends on the context. It can mean different things in different contexts. We don't dispute that. You said a minute ago it was inconsistent with other provisions of the Patent Act. What other provisions are you referring to? It is inconsistent with how Congress used it in Section 121, where three times Congress uses the phrase original application, and it's very clear. But that's in a statute that discusses or makes a distinction. It's a relative identification as between an application that's filed and then subsequently divided and a divisional application. So it's used in context in a relative sense. Why is that inconsistent with the Patent Office's interpretation of the AIPA? Two additional reasons. One, out of over 7 million patents that have issued, there have been slightly over 10,000 reissued patents that have issued. There's a relatively small universe. The Patent Office has given no persuasive reason why, in limiting the scope of the retroactive activity of the AIPA, that Congress would have intended to focus on that very small universe. And moreover, their definition makes no sense, because under their definition, an original application that was filed after 1999, for which a reissued patent was sought, would be exempt from inter partes reexamination, which they all but concede in their brief. Their definition does not make sense with what Congress was trying to do. But how do we know what Congress is trying to do? You're sort of assuming the result here. But where is their legislative history, or some report, or some explanation of, we in Congress, in passing this section, want this and this to happen, and we don't want something else to happen. Where is that? Neither side has significant legislative history to rely on. That's the way it looks to me, too. Both sides are relying on it. But then how can you say that the intent of Congress is being violated here? Because we can look to the text of the statute, and it is inconsistent with the text of the statute, and one can assume… That's their interpretation of the word original in the statute. One can assume that… So we're back to square one. What does original mean? You say you think you know what it means. They say they think they know what it means. The two of you disagree. We have to decide. Your Honor… But it has nothing to do with Congress's intent. A straightforward interpretation of original. The ordinary meaning of original, and in interpreting statutes, the ordinary meaning is the one that courts should give effect to. If it has an ordinary meaning, if it's used uniformly in every setting, but as Judge Lynn pointed out to you, it appears that it's used quite differently in different places, and therefore it takes its meaning from the context in which it appears. With respect, Your Honor, ordinary meaning doesn't mean it's used exactly the same in every setting. If that were the case, it would be called the exclusive meaning. Ordinary meaning means it can be used different ways, but what is it ordinarily used as? And ordinarily, when Congress or anyone else uses the word original, it means the first one, the initial one. You say so, and they say not. So how does this get us anywhere? Well, Your Honor, let me give you an entirely different basis. It's like kids arguing. Yes, it is. No, it isn't. Yes, it is. No, it isn't. Let me give you an entirely different basis why, under a different section of the statutory text, the Patent Office's definition is inconsistent with the language, which is section 120 provides that a continuing application as a matter of law, quote, shall have the same effect as though filed on the date of the prior application. That means by statute, this application shall have the same effect as though filed on June 20, 1994. And part of the effect of having been filed in 1994 is not being subject to inter partes reexamination. That doesn't answer the question, though, as to what the word original means. Because having the same effect or having the same effective filing date or having the benefit of priority are all interesting concepts. But nonetheless, the application that we're talking about, the continuation application that we're talking about, from which the patent in question issued, was filed after November 24, 1999. Indeed, but it was not an original application. We would submit the ordinary definition of an original application is the first application that provides support for the claim to mention, the claim subject matter. But let me focus for a second. If that's your interpretation, that means that the inter party reexamination proceeding only relates to parent applications? That's not the case. It's the first application that provides support. Well, your argument is that the first application is the original application. Or if it's a continuing in part application, that is the first one that provides support for the claim subject matter. So inter parties reexamination applies to parent applications and CIPs to the extent that new matter is introduced? Exactly. And Congress intended this. How would the Patent Office administer that with respect to CIPs? It would be quite straightforward. It would ask, what is the date that the application claims priority to? Well, but it could be different dates applied to different things and different claims. With respect to, if I can. Well, just try to answer my question. I don't know how the Patent Office would administer that when you have a CIP with claims that contain some limitations that are supported by subject matter that was in the parent and some limitations that relate to new matter. The question that Congress set forth in the AIPA is. Are you answering my question? I'm endeavoring to, which is that they would be obliged to look to see if it was an original application that was filed after the date. Well, what the Patent Office does, correct me if I'm wrong, is determine whether the prior application is entitled to the following date. And that is the original application. Each application has to be compared with the prior one, which becomes the original one. And on any straightforward. In other words, if you have a fourth application, filed as a continuation or a CIP of the third, the third is the original application with respect to the fourth. Because that is the date whose priority it claims. With respect, that would depend if it was the third that introduced the new matter or if it claimed priority to the second in that chain. It would depend what was the first application that introduced the new matter. What do you have to say about Section 252, which says the surrender of the original patent shall take effect upon the issue of the reissued patent? In other words, anything but a reissue, which is the Patent Office's regulation, is an original application. There's no doubt that in discussing reissued patents, it's quite reasonable to contrast them with original patents. And we don't dispute that it can be used in that context. But the ordinary usage of the word, if one asks the question, is a continuing application an original application? That question answers itself. It's not the ordinary usage of the word original. But why in determining this don't we defer to the Patent Office's interpretation? After all, they're in the business of receiving applications, determining priority dates. And this is the meat and potatoes of their daily work. For an altogether different reason, which is Section 120 is categorically inconsistent with this interpretation. Section 120 speaks in mandatory terms, shall have the same effect. As? As though it were filed on the date of the prior application. Which means, as a matter of law, Congress has said this continuing application shall be treated exactly the same. This Court described in Transco Products versus Performance Contracting, that shall have the same effect means have the benefit of it. In fact, that opinion I would urge the Court to look closely at. Because the Court explained in considering the best mode requirement in that case, that the date for evaluating a best mode disclosure in a continuing application is the date of the earlier application. Why? Because Congress has specified this shall have the same effect as if it were filed on the earlier date. There's no dispute if this were filed on the earlier date, 1994, there would be no inter partes reexamination. Under the explicit language of Congress, shall have the same effect means it is treated the same way. What about the fact that the statute we're talking about was enacted, I guess it was in 1999, long after Section 120? Why isn't it a more specific subsequent treatment? So that if there's any asserted inconsistency, the later in time trumps. If they were inconsistent, that would be true. But the later in time, this was not speaking, the AIPA was not speaking with any level of specificity to the effect of continuing application. Section 120 is. Section 120 is explicitly addressed to that topic. The section we're talking about, the AIPA, is its general date, its effective date. And it's in endeavoring to limit the scope of retroactive activity. Congress inserted the word original. The Patent Office has consistently manifested a desire, a policy desire, to constrain the use of continuing applications. That may or may not be a good policy issue. But it is an issue that ultimately is one for Congress to decide, not for the Patent Office. And the Patent Office has attempted to convince Congress of that and has consistently failed. Indeed, the Patent Office's recent rules restricting the number of continuing applications that can be filed have just been struck down in the Eastern District of Virginia. That's not an issue in this case. We have enough trouble with the issue that is in this case. Let's stick with that. The issue in this case is simple and straightforward. Section 120 provides a continuing application shall have the same effect. Section 120 trumps you, Moon, no question about it. If it's not relevant, then you don't win. So we'll have to evaluate whether it is or isn't. Let me make sure I understand your position. If an application were filed after the effective date of November 29, 1999, and someone wanted to avoid the risk of an inter-party re-exam, could they file a continuation application, just repeat the same claims, abandon the parent, and let the continuation issue as a patent? And does that become then bulletproof? It would not if the original application was filed after 1999. But I thought your argument a minute ago, and this is why I asked this question, just to clarify your position. I thought your interpretation of the language of the AIPA was that original application only spoke to the parent. It speaks to the first application. And in my hypothetical, the first application was abandoned. But in your hypothetical, if I understand it correctly, the first application was filed after 1999. Correct. In that situation, we think that would clearly be subject to inter-parties re-examination because the original application, which is the first application that provides support for the claim matter, was filed after 1999. It is the Patent Office's definition that is subject to gamesmanship. The Patent Office's definition excludes all reissue patents, which is, there's no indication Congress intended that. That's an altogether arbitrary definition. I see my time has expired. Let's hear from the government and the private party, and we'll give you back the five minutes you sought to reserve for rebuttal, even though the time actually expired. Mr. Kelly, welcome back. Good morning to you. May it please the Court. As we've just seen, Cooper's definition is unworkable. It's unworkable because an applicant controls the priority claim. Cooper links the existence or non-existence of a priority claim to originality. And Cooper's mistake, of course, is that a priority claim runs on a claim-by-claim basis in an application, for example, in a CIP. If there were a CIP, as there is in this case, the Patent Office would have to know which claim had which priority date. Of course, the word original, its ordinary meaning, really suggests the first in the chain, not just the prior one. And we have never suggested, Your Honor, that it's not used sometimes that way. Instead, what we've suggested is that at the time Congress passed the AIPA, Section 4608, the Patent Office had a longstanding definition, a term-of-art definition, that was in the MPEP. Now, four months ago, this Court interpreted the phrase divisional application in FISA or VTIVA. And this Court said, when this statute, Section 121, was passed, the MPEP had a standing definition of divisional application. And if Congress meant something else, they would have said so. You think Congress reads the MPEP? Knows everything that's in there? Highly unlikely. Well, Your Honor, I think when Congress passes a law for an agency to administer, and there's nobody else administering the statute, and this effective date provision needs to be interpreted by the United States Patent and Trademark Office, there's no one else who can interpret it, I think Congress would understand that if we have a term-of-art, that we have a definition that we've used for years, that when they use that term, we're going to interpret it consistently with our definition. You know, there are other references made to other uses of original application in the MPEP, and, of course, the reference to the Section 121 of Title 35. And your brief addressed all of those and pointed out that, from your perspective, those are all sort of in-context, relative terms. So it was not sort of definitional of what an original application is. There was no discussion in either party's briefs of a number of other sections in the MPEP. For example, in Section 201, that section says, Domestic patent applications fall into three different types, applications for patent under 101, new and useful machine process, etc., plant patents, design patents, and it goes on to say, patent, design, reissue, division, continuation. It's not used in a relative term, in a relative setting in that section. That simply lists out different types of domestic national applications and differentiates between an original and a continuation. And the same language is used in Section 201.06c. It says, an application filed under 37 CFR 1.53b, which is sort of the default provision covering all applications, may be, it says, may be an original, a continuation, a divisional, a continuation in part, etc. Same thing appears in Section 601.01a. 37 CFR 1.53b may be used to file any original, reissue, or substitute provisional, non-provisional application, and any continuation application, etc. So there are several places in the MPEP which seem to differentiate between an original application and a continuation application, not in a relative sense, but in a sort of categorical sense. What do you say about that? Because it's not in the briefs, and it seems to me that these are significant sections that should be considered. First, Your Honor, I would say that I don't know that all of those lists that you just referred to are mutually exclusive. I think in one of the lists it was plant patent and then continuation, utility patent, original. Those aren't necessarily mutually exclusive terms. I would also say that we have never denied, and we don't deny today, that the word original means to some people first, and it means in many contexts first. The question is what it meant in Section 4608, when Congress enacted Section 4608, and attributing to it a meaning that means first application makes the system unworkable. It makes the system non-prospective. The way we interpret Section 4608, September 29, 1999, is a lie. If you enter the system and seek its benefits after that day, you will bear the burdens of the system. The system changed, and so when they entered it again, they bear all of its burdens to the extent that they think inter-party re-examination is a burden. Now, counsel referred repeatedly to Section 120. Section 120 is, of course, a priority section. Priority is used in patent law for one reason, to measure the claims, to measure the invention against the prior art. For prior art purposes, 102, 103. For interference purposes. For purposes, correct, Your Honor. But when Congress, for example, when they change the patent term from a 17-year from issue term to a 20-year from filing date term, there is no question that an application or patent like Cooper's that entered the system after the effective date of the Uruguay Rounds Agreements Act, that that will have a 20-year term measured from filing and not the 17-year term. Congress, when they make a prospective law, it applies to people who enter the system regardless of whether or not they claim priority. And bear in mind that the existence of a priority claim is entirely in their control. They don't have to claim it when they file their application. They can amend their application to change the priority during pendency. They could even amend their patent. They could change their patent after it issued to add or subtract a priority claim. By tying the existence to a priority claim, to an application's originality, they've made a system that's unworkable for us and a system that doesn't work prospectively. Unworkable, what, in the context of a CIP application? In the context of a CIP application, which is, of course, what was involved here, it's also unworkable because an applicant and later a patentee could change whether or not they claimed priority to a particular application that was filed before the effective date. They could delete their priority claim. They could escape inter-party re-examination by deleting a priority claim. They could do that during pendency. They could do that after issuance. Let me ask you a question about deference. What sort of deference is owed to the Patent Office's interpretation of the Act? In this case, Your Honor, the district court determined that there was no reason to go to the deference issue because Judge Brinkman reviewed our claim, our construction of the statute de novo. If we conclude that really some of the arguments are in effect neutral and don't really provide guidance, then this may turn on the extent to which the Patent Office is entitled to some deference for its application of the statute. Certainly, Your Honor. As we pointed out in our brief, we're absolutely entitled to skid more deference, at least. What does that mean here? It means to the extent that our interpretation has the power to persuade, to the extent it's a reasoned analysis based on a consistent approach, that if that is persuasive... What's the reasoned analysis? The reasoned analysis is that we've had a term of art. It's been on our books for quite some time now. It's consistent with the prior version of the Patent Act. It's consistent with cases that use reissue applications in distinction to original applications, and that here Congress was not referring to the first in a chain. They didn't say the original. They said an original. They're referring to a category of applications, and none of their definitions go to a category. They go to a particular application in the context of what's being discussed. That's an important point you just flipped over. An original. That's an important part of your argument, and it should be, shouldn't it? Judge Lurie, I do think it's important because... Rather than the original. Correct, absolutely. In other words, there can be a number of originals. Well, in their interpretation, every time they take these little snippets, the writer, for example, in Section 121, is referring to the original that's already been mentioned in the course of discussing two applications. That's not what Congress did in Section 4608. They said an original application, as if that's a category of applications distinct from another category. Doesn't it also say filed in the United States? Yes, Your Honor. Why did it need to say that? At the time the AIPA was passed, there were also amendments made to international filing. I'm not certain why they put it in the United States. It seems redundant because, of course, you can't get an inter-party re-examination on anything else than the United States patent in the Patent and Trademark Office. Yeah, and you can't get a patent issuing from a foreign application. Correct. Maybe they didn't need to put the word original in either. Maybe it has as little meaning as the phrase filed in the United States. But they did put it in, Your Honor, which is why we interpreted, we issued a Federal Register Notice, we used the same approach this Court used in FISA or VTIVA, and we created a prospective system. Does your interpretation just simply read out of 4608 the word original? No, absolutely not, Your Honor. It doesn't. We read 4608 as telling us when an original application has to enter the system, after November 29, 1999. Well, that's the part that's easy. The hard part is, what does it mean? Everybody knows whether something's before 1999 or after 1999. What it means, Your Honor, and this goes to a point that Cooper raised, is with respect to reissue patents. Here's what it means. If you enter the system after November 29, 1999, you get an original patent from your original application, and then you come back to the Patent Office because there's something wrong, and you get a reissue patent, the fact that you got a reissue patent does not strip the original patent of its eligibility for interparty reexamination. On the other hand, if you come in before the effective date, you get an original patent, and then after the effective date, you return to the Patent Office because there's an error. You bring it back to us because there's something wrong with it, and we reissue it. That reissue patent will not be subject to interparty reexamination because you didn't enter the system seeking an original patent after the effective date. So you're saying when Congress passed this statute, 4608, and used this language, any patent that issues from an original application, what they meant was any application except reissue based on an original patent that filed before 1999? What they meant, Your Honor, was if you're going to enter the system and seek an original patent, whatever you get from an original patent, even if you get it later reissued, it's going to be subject to reexamination, interparties. If you come into the system and all you're seeking is a correction of an existing original patent to reissue, that would not be subject to interparty reexamination. Now, I've spoken with Mr. Fish ahead of time, and I wanted to give him some time to talk. So unless the Court has any further questions, me, the Patent and Trademark Office, would request that the District Court's decision be affirmed. Thank you, Mr. Fish. Good morning, Your Honors. May it please the Court. Before I proceed, I'd like to introduce three people who are on the briefing with me that are in the courtroom right now. Ms. Cope Morgan Stewart, Mr. R. William Sigler, and Mr. Jason Hoffman. Your Honors, I agree with the Court that the fundamental issue here is what is the definition of original application. I think the good news for all of us is we don't really need to go through a lot of histrionics to make that determination. Congress has given us a roadmap on this issue. As we all know, November 29, 1999, is the date in which this legislation is passed. Roughly one year later, December 7, 2000, as we've heard, the Patent and Trademark Office issues a notice in the Federal Register, and not a small notice either. The notice contains a couple of key items that I'd like, with my very brief time, to address with the Court. The first is that it identifies that it will be using the term original application consistent with Section 201.04, subsection A of the MPEP, which explicitly defines the term original application. The Federal Register notice also, eight pages later on page 10, identifies a flaw in the regime, specifically that flaw being that an applicant, that a patent owner, is permitted under the statute to initiate their own inter-parties re-examination against themselves. The Patent Office requests, in the Federal Register notice, that Congress correct that mistake. Two years later, November 2, 2002, in the Intellectual Property and High Technology Technical Amendments, dealing specifically with the AIPA, this regime of inter-parties re-examination, Congress corrects the issue that the PTO on page 10 of the Federal Register notice identified. Congress corrects a few other portions of the statutory regime as well. Congress does not weigh in on the issue of the propriety of the PTO's definition of choice for original application. I see my time is run. My original agreement with the government was to have seven minutes. I would hope that the Court would permit me to proceed for a few more. Go ahead. Thank you, Your Honor. Specifically, this issue is one we know about. Namely, that the Congressional view here is essentially a ratification of the PTO's approach to the regime and its choice of interpretation. The definition of original application is not new. It's 25 years old. As we know, it goes back to 1983 in the MPEP. Is it mentioned anywhere in the legislative history of this act in question? I'd like to believe that based on the Daewoo case that this Court had, that it teaches us... I'm asking you a specific question. Is there anything in the legislative history that would show that when it passed this statute, Congress was aware of that provision in the MPEP and how long it had been there? It is silent on that particular issue, but I believe Congressional action after the fact is illustrative of its intention and its goals with this particular statute, in particular. It has a decided view based on the Daewoo case that there is a presumption, it's persuasive evidence, what Congressional intent was when they do not disturb the importation, or in this case, the approach undertaken by the administrative agency when they undertake subsequent modifications to the same regime. Yeah, but to give it any power, they have to know about it. You can't say the fact they didn't change something they were unaware of proves they liked it. That's just ridiculous. So it all depends on did they know, did they consider it, did they say, oh yeah, that's really what we meant, so we'll just leave it alone. Wonderful. Maybe they did, maybe they didn't, we don't have any idea. Well, Chief Judge, I'd like to believe that we can understand it not only based on the Daewoo case, which says to us specifically that it is persuasive evidence. In fact, here's the exact quote. Failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress. But this doesn't address the Chief Judge's point that what difference does that make if there's nothing to indicate that Congress even had that in mind? Well, we understand, Your Honor, that Congress eventually was presented with that issue and we know that when the Federal Register issued, as I indicated, the two key pieces that I called to the Court's attention, specifically the first identifying on page 2 that the Patent Office was going to be implementing this approach as it related to the definition found in the MPEP for original application. And the second, eight pages later, that it asked Congress to adjust the statute to fix the problem with parties being able to initiate their own inter-parties re-examination. We know that Congress fixed that provision in the technical amendments two years later. But they didn't address the date of the applications or what applications would be subject to inter-parties proceedings. Well, presumably, Congress wouldn't correct something that wasn't broken in its own mind, right? Well, you're making a lot of presumptions about Congress. I think they're very, very shaky. They're in case law where it's a default situation and you really can't tell what's going on so you have some default rules so you can decide the case.  an awful lot of knowledge and intention to Congress. Very hard for me to believe that they had any idea what was going on. I respectfully disagree, Your Honor, to the extent that Congress is very focused on the rulemaking in light of, and we know this based on what we've seen. I would ask this court to... All those cases that give heavy deference to the implementing agency construing statutory terms involve agencies that have substantive rulemaking authority. It's very clear from our case law that the Patent Office is one of the very few administrative agencies that administers a statute that doesn't have substantive rulemaking authority. So, it seems to me that makes a huge difference in all those cases that are full of dicta about how much deference Congress gives to agencies if Congress has given them substantive rulemaking power but not if they haven't and here they haven't. So, I don't think those cases help you very much. Your Honor, I'd like to ask the court then respectfully to reevaluate its assessment of the Daewoo electronics case 6F3D 1511 in particular the passage I read came from 1522. I think the fact pattern is very very similar. It's as congruent as there is anything that's been put before this court. Fair enough. Anything further? Your Honor, I would just like to quickly mention as the court knows that this case really is an outgrowth of a case that began in the Eastern District of Texas. We were set to have a jury in that case in seven weeks from today. Judge Brinkema understood the exigent circumstances when she ruled from the bench. If the court is inclined to do so today, I suspect that all parties would welcome the ability to give guidance to the Eastern District of Texas as it relates to this specific issue. We have previously filed a motion for a stay pending the outcome of the reexamination. It has been denied. It was denied in April when the Patent Office once again rejected each and every claim in interparties reexamination for the final time in the RAN, the final piece, as we know, to the interparties reexamination. We, again, last Thursday, a week ago Thursday, filed a renewed motion for time in the RAN. It has been denied in April when It has been denied to all members of  to all members of the RAN. It has